SMITH, RESPONDENT, *v.* CITY OF BUTTE, APPELLANT.

(No. 2,756.)

(Submitted January 22, 1910.   Decided February 4, 1910.)

[107 Pac. 409.]

*Cities and Towns—Changing Street Grades—Damage to Property—Ordinances—Evidence—Admissibility—Appeal — What not Reviewable.*

Appeal—Questions not Reviewable.

1.   Appellant will not be heard to call in question the correctness of a ruling of the district court on the admissibility of certain evidence, upon a ground different from that urged in the trial court.

Cities and Towns—Changing Street Grades—Evidence—Admissibility.
2.    Where defendant city, in an action for damages caused to plaintiff's house and lot by raising the street grade in front thereof after he had erected the building, failed to prove that the house was built subsequent to the enactment of certain ordinances establishing the street grades, it was not in a position to complain, on appeal, of a ruling of the trial court refusing to admit such ordinances in evidence; if the house was erected prior to their enactment, the ordinances were immaterial, whereas, if proven to have been constructed subsequent to their passage, they might properly have been offered in evidence.

*Appeal from District Court, Silver Bow County; John B. Mc-Clernan, Judge.*

ACTION by A. C. Smith against the city of Butte.    Judgment for plaintiff.    Defendant appeals from the judgment and an order denying it a new trial.    Affirmed.

In behalf of Appellant, there was a brief by *Mr. Edwin M. Lamb,* and *Mr. John R. Boarman,* and oral argument by *Mr. Lamb.*

In behalf of Respondent, there was a brief by *Messrs. Breen & Hogevoll,* and oral argument by both.

MR. JUSTICE SMITH delivered the opinion of the court.

It appears that plaintiff is the owner of a portion of lots 23 and 24, in block 7, of the Noyes & Upton addition to the city of Butte; said block being bounded on the east by Colorado street, on the north by West Platinum street, and on the west by Dakota street, the lots fronting on West Platinum street. The property is known as No. 64 West Platinum street.    Plaintiff became the owner of the lots on December 26, 1906, at which time West Platinum street was a public highway.    He alleges in this complaint that, "relying upon the then grade and surface of West Platinum street in front of said lot, he did during the year 1906 buy a certain dwelling-house upon the said lot and place other improvements thereon"; that in August, 1908, the defendant established a grade, and thereafter, in 1908, raised the street to the extent of six feet and one inch all along his

lot, and thereby changed the grade of the street to his great damage. He further alleges that it will be necessary to raise the house, put in new plumbing, and "do a great deal of other work in connection therewith, whereby the house of the plaintiff will be damaged"; also that by reason of the premises the lots have been lessened in value, all to his damage in the sum of $1,200. The answer denies all of the allegations of the complaint, except that Colorado and Dakota streets are public streets, and then sets forth, affirmatively, in substance, that in 1890 a grade point was, by ordinance, established on Platinum street at its intersection with Colorado street, and in 1892 a grade point was established upon Platinum street at its intersection with Dakota street; that these grade points have never been changed, and the same now are (with reference to the standard or so-called "city bench mark" of 758, established by City Ordinance No. 130) 568 feet at Dakota and Platinum streets, and 577 feet at Colorado and Platinum streets, "and between said grade points no intermediate or other grades exist." It was remarked by counsel for defendant during the course of the trial that "City Bench Mark 758" means 5,758 feet above the level of the sea, and that "568" and "577" have the same reference, the "5" being dropped for convenience. The answer also alleges that, in grading and filling West Platinum street, no change or alteration was made in the grade as originally established. The reply puts in issue the affirmative allegations just referred to. The cause was tried to the district court of Silver Bow county, sitting with a jury, who returned a verdict in favor of the plaintiff for $300 damages. From a judgment on the verdict, and an order denying a new trial, the city of Butte has appealed.

The plaintiff testified that when he bought the property "the house was a foot higher than the street; it remained that way until last August, when the city changed the street, and I found my house was six feet lower than the street. Prior to the purchase of the property I made no inquiries as to whether a

grade had been established by the city." J. H. Turner testified, over objection, that to raise the house six feet, make the repairs necessitated by such raising, and fill in the lot, would cost $694. The city attorney insisted, at the time this testimony was received, that, as the plaintiff was the successor in interest of prior owners, he had no right of action, and also that the only damages recoverable by him in any event must be for injury to the lots, "because of the fact that the house was placed there with a full knowledge on his part, or on the part of his predecessors in interest, that the grade would be established at a greater height." Plaintiff offered in evidence an ordinance of the city, approved July 23, 1908, providing for doing the work of grading Platinum street, from Colorado street to Dakota street, and after proving the service of his claim for damages, filed with the city council, he rested his case.

Defendant's counsel then offered in evidence Ordinance No. 149, which the city clerk testified "contains the establishment of the grade of the northeast corner of block 7 of the Noyes & Upton addition to the city of Butte." The ordinance was objected to on the ground that it constituted no defense to the action, and apparently for the additional reasons that it was too remote in point of time, and had never been filed in the office of the county clerk and recorder. The court sustained the objection. That portion of the ordinance which is material here reads as follows:

"Section 1. That the street, sidewalk, and other grades hereinafter named shall be established and referred to the city B. M. as officially established by section 1 of Ordinance 130, further described as the top of a steel pin whose official elevation is 758 feet.

"Section 2. That the sidewalk grades upon the block cors., and changes of grade on property line as shown on plats filed in the office of the city engineer, with reference to the B. M. above referred to, be established as follows, to-wit: * * * In Noyes & Upton's addition the following grades are established:

* * * In block 7, N. E. Cor. of block 577. In block No.
8, N. W. Cor. of block 577.'' This ordinance was approved
November 6, 1889.

The city clerk then continued: "The paper you hand me is
Ordinance No. 238, establishing street grades in the city of
Butte.'' The paper was offered in evidence. Counsel for plain-
tiff: ''I ask your Honor's permission to have the same objec-
tion to this ordinance as I had to the other one.'' The court
sustained the objection. The material parts of this ordinance
are as follows:

"An Ordinance Establishing Street Grades.
''Be it ordained by the city council of the city of Butte.

"Section 1. That the street grades hereinafter named shall
be established and referred to the city bench mark as officially
established by section 1 of Ordinance No. 130:

"Dakota Street.

"Northwest corner of Platinum street............570.0 feet.
"Northeast corner of Platinum street............570.0 feet.
"Southwest corner of Platinum street............568.0 feet.
"Southeast corner of Platinum street............568.0 feet.''

This ordinance was passed and approved June 24, 1892.

J. H. Kyd, city engineer, testified: "I know where Platinum
street is, between Colorado and Dakota, and know where the
frame houses back of the alley are. I remember when they
were put in there. It was in 1897. I was instructed to go
down, by the engineer in office at that time, and mark the grade
for the parties moving in the houses. I went out and gave
these people what was the established grade. * * * A pro-
file or map is kept in the office of the city engineer showing
the grades of the streets as established by ordinance. There
was a map and profile kept showing the grade of Platinum
street.'' Defendant then offered in evidence a map showing the
grade as established by the city on Platinum street, from Dakota
street, and showing the property of plaintiff situated on Plati-
num street and Colorado "alley.'' This map was objected to
generally, and was finally admitted by the court for the sole

purpose of showing the "raise in the street in front of the premises of Mr. Smith." The map is not in the record. The witness continued: "I am familiar with the levels and grades established on Platinum street, between Colorado and Dakota. That street, between Colorado and Dakota street, was filled in accordance with the grades of the ordinances of the city of Butte, as established, and in accordance with those elevations and no higher."

It is argued in behalf of the respondent that the ordinances were properly excluded, because of the fact that they are not sufficiently definite and certain to fix the street grades; but we cannot reach that point in the controversy. The only contentions of the appellant are thus expressed in the brief of counsel: "The contention of the appellant is that the only damage, if any, that the plaintiff would be entitled to recover, would be the damage which he suffered by reason of the injury to the lots themselves, and that this element of damage is to be ascertained by the rule which requires evidence of the value before the grading and the value after the grading. Then the difference is the amount properly recoverable. There being no evidence of this character at all, then, of course, the plaintiff would not be entitled to recover as to the injury to the lots themselves. The further contention of the appellant is that the paper grade having been established in 1889 and 1892 affecting this property, and the improvements having been made after the establishment of the grade, the plaintiff therefore made the improvements with knowledge of the grade line, and that the grading would be done in accordance therewith, and that whatever improvements the plaintiff might make after the establishment of the paper grade are made at the peril, risk and hazard of the plaintiff, if not made with reference to the established grade line." The following cases are relied on, all of which appear to bear out counsel's contention, viz.: *Blair* v. *Charleston*, 43 W. Va. 62, 64 Am. St. Rep. 837, 26 S. E. 341, 35 L. R. A. 852; *Manning* v. *Shreveport*, 119 La. 1044, 44 South. 882, 13 L. R. A., n. s., 452; *Sallden* v. *City of Little Falls*, 102 Minn.

358, 120 Am. St. Rep. 635, 113 N. W. 884, 13 L. R. A., n. s., 790;
*City Council* v. *Schrameck,* 96 Ga. 426, 51 Am. St. Rep. 146,
23 S. E. 400.

In the case at bar it does not appear that the plaintiff attempted, directly, to make any proof of damages sustained by reason of injury to his lots. The defendant cannot complain of this omission. The plaintiff offered proof of damages suffered by reason of injury to his building. The testimony of the witness Turner was given in response to the following question: ''Well, can you tell us the reasonable value what a person skilled for that purpose would charge to raise the house six feet?'' The question was objected to, but not for the reason that it did not comprehend the proper measure of damages recoverable on account of detriment to the building. Therefore no complaint may be made on that score. The point now insisted upon by counsel was, apparently, not advanced in the court below. We make this statement for the reason that the only evidence as to when the plaintiff's improvements were constructed is found in the testimony of Mr. Kyd, who said: 'The frame houses back of the alley were put in there in 1897.'' This falls far short of proving that plaintiff's house was constructed in 1897. For aught we know, it may have been built prior to 1889. If it was, then the ordinances were immaterial. (*Less* v. *City of Butte,* 28 Mont. 27, 98 Am. St. Rep. 545, 72 Pac. 140, 61 L. R. A. 601.) If it was constructed subsequent to the passage of the ordinances, and the defendant relied upon that fact, it should have been proven as alleged in the answer, after which the ordinances might properly have been offered in evidence. In this connection it may be remarked that Ordinance No. 130, mentioned in the answer, which fixed the city bench mark or standard, and was referred to in ordinances 149 and 238, was not offered in evidence.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.